STATE OF CONNECTICUT *v.* MARY THERIAULT
(13046)

LANDAU, SPEAR and HENNESSY, Js.

816

Argued April 18—decision released August 22, 1995

*G. Douglas Nash,* public defender, for the appellant (defendant).

*Nancy L. Gillespie,* deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *John J. Dropick,* assistant state's attorney, for the appellee (state).

LANDAU, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of sale of narcotics in violation of General Statutes § 21a-277 (a).[1] She claims that the trial court improperly (1) failed to charge the jury that the state's key witness had three particular prior felonies, (2) denied her motion for judgment of acquittal, (3) charged the jury as to the definition of "sale," and (4) failed to charge the jury as to the definition of "agent."

The jury could have reasonably found the following facts. On the evening of December 3, 1991, Nicholas Wassil and David Groleau went to the defendant's apartment building for the purpose of buying heroin. Wassil, who had had prior dealings with the defendant, went inside and knocked on the door of the defendant's apartment. When the defendant answered, Wassil stepped just inside the doorway and asked the defendant if she had "any dope." The defendant, who understood that Wassil meant heroin, answered "No." An unidentified woman, inside the apartment behind the defendant, said that she had some. In response, Wassil handed $40 to the defendant, who handed it to the woman. The woman then handed two bags of heroin to the defendant, who handed them to Wassil. Wassil and Groleau returned to Groleau's house, where they each injected a bag of heroin. Groleau died later that evening from acute combined drug toxicity.

---

[1] General Statutes § 21a-277 provides in pertinent part: "(a) Any person who . . . sells . . . a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned . . . ."

The defendant was charged with manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3)[2] and sale of narcotics. The jury found the defendant guilty of the lesser included offense of manslaughter in the second degree in violation of General Statutes § 53a-56 (a) (1)[3] and sale of narcotics.[4] Following the verdict, the trial court granted the defendant's motion for judgment of acquittal as to the manslaughter charge, but denied it as to the sale of narcotics charge. This appeal followed.

I

The defendant first claims that the trial court inadequately applied the law to the facts of the case in its charge to the jury. Specifically, she argues that, while the court properly instructed the jury on the principle that a witness' prior felony conviction may be considered in assessing that witness' credibility, the court failed to charge that the state's key witness had been convicted of three specific felonies.

The following additional facts are relevant to this claim. Wassil, who testified on behalf of the state, was the only witness linking the defendant to the sale of the heroin. On direct and cross-examination, Wassil testified that he had felony convictions for larceny in the third degree, possession of narcotics and forgery in the second degree.

---

[2] General Statutes § 53a-55 provides in pertinent part: "(a) A person is guilty of manslaughter in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

[3] General Statutes § 53a-56 provides in pertinent part: "(a) A person is guilty of manslaughter in the second degree when: (1) He recklessly causes the death of another person . . . ."

[4] In part B of the information, the state also charged the defendant with being a second time narcotics offender. The defendant pleaded guilty to this charge following the jury verdict on the sale of narcotics charge.

The defendant submitted a request to charge that specifically noted Wassil's felony convictions and their relevance to the jury's assessment of his credibility.[5] The trial court instructed the jury: "Now, there was testimony here of a previous felony conviction on the part of Nicholas Wassil. That evidence was offered and admitted for one purpose only, to address the question of credibility or believability of the witness Nicholas Wassil." The court then instructed the jury on the general law of how a jury may utilize a witness' prior felony convictions in appraising the witness' credibility. Following the charge, the defendant excepted, arguing that the trial court should have referred to and specified Wassil's three convictions, rather than mentioning a single, undesignated felony. The trial court declined to reinstruct the jury.

While jury instructions "need not be exhaustive, perfect or technically accurate, they must be correct in law, adapted to the issues and sufficient for the guidance of the jury." (Internal quotation marks omitted.) *Felsted* v. *Kimberly Auto Services, Inc.*, 25 Conn. App. 665, 668, 596 A.2d 14, cert. denied, 220 Conn. 922, 597 A.2d 342 (1991), quoting *Preston* v. *Keith*, 217 Conn. 12, 17, 584 A.2d 439 (1991).

"The primary purpose of the charge is to assist the jury in applying the law correctly to the facts which they might find to be established. *Worden* v. *Francis*, 153 Conn. 578, 579, 219 A.2d 442 [1966]; *Deutsch* v. *LaBonne*, 111 Conn. 41, 44, 149 A. 244 [1930]." *Vita* v. *McLaughlin*, 158 Conn. 75, 77, 255 A.2d 848 (1969).

---

[5] The defendant's request to charge provided in pertinent part: "In weighing the testimony of witnesses, it must be considered by you that the witness, Nicholas Wassil, is a self-confessed or convicted criminal and everything else being equal, you would not believe the testimony of a person who has committed a crime as readily as you would a person of good character. Nicholas has been convicted of several felonies: larceny, forgery and possession of narcotics."

For this reason, "[a] charge cannot be given in the abstract without reference to the evidence sufficient to provide guidance to the jury in arriving at a just result." *State* v. *Wolff*, 29 Conn. App. 524, 531, 616 A.2d 1143 (1992); see also *Shelnitz* v. *Greenberg*, 200 Conn. 58, 72, 509 A.2d 1023 (1986). The court's instructions must "go beyond a bare statement of accurate legal principles to the extent of indicating to the jury the application of those principles to the facts claimed to have been proven." *State* v. *Sumner*, 178 Conn. 163, 170–71, 422 A.2d 299 (1979); *State* v. *Wolff*, supra, 531. The trial court does not properly fulfill the role of giving proper jury instructions by simply laying down the general principles of law applicable to the case and then leaving it to the jury to apply them. *State* v. *Wolff*, supra, 531–32. Rather, it is the trial court's obligation to inform the jury what the law is as applicable to the facts of the case. Id., 532.

"While [t]he degree to which reference to the evidence may be called for lies largely in the discretion of the court . . . reference to the evidence is required sufficient to guide the [jurors] in their application of the stated law to the evidence before them." (Citation omitted; internal quotation marks omitted.) *Mack* v. *Clinch*, 166 Conn. 295, 297, 348 A.2d 669 (1974). If the issues presented to the jury are not complicated, the trial court must, at a minimum, refer to the essential facts surrounding each instruction. *Amato* v. *Sawicki*, 159 Conn. 490, 494, 271 A.2d 80 (1970). "Whether the trial court's charge adequately relates the issues of law to the facts of a case depends on the particular circumstances of that case." *State* v. *Crosby*, 36 Conn. App. 805, 814, 654 A.2d 371, cert. denied, 232 Conn. 921, 656 A.2d 669 (1995).

In this case, the defendant does not contest that the trial court properly presented the general legal principles applicable to the jury's consideration of a wit-

ness' prior felony convictions. Rather, she argues that the court did not refer the jury to the essential facts surrounding that instruction. She asserts that the court erred by omission as well as by affirmative misstatement. That is, not only did the court fail to specify Wassil's three felony convictions, but it also charged the jury that "there was testimony here of *a* previous felony conviction on the part of Nicholas Wassil." (Emphasis added.)

The state argues that even if the challenged language in the court's charge did indirectly indicate to the jury that it should consider only a single, unspecified felony conviction in weighing Wassil's credibility, the remainder of the charge properly emphasized to the jury that its recollection of the evidence controlled. Consequently, because the jury had heard evidence that Wassil had convictions for larceny, forgery and possession of narcotics, it understood that those convictions could be considered in the assessment of Wassil's credibility.

Because Wassil was the only witness linking the defendant to the alleged sale of the heroin, the defendant's attack on Wassil's credibility was essential to her defense. General Statutes § 52-145[6] provides that conviction of a crime may be shown for the purpose of attacking a witness' credibility. Our Supreme Court has held that " 'a conviction of a crime, whether or not the crime is denominated a felony, is admissible under § 52-145, only if the maximum permissible penalty for the crime may be imprisonment for more than one year.' " *State* v. *Braswell*, 194 Conn. 297, 307, 481 A.2d 413 (1984), cert. denied, 469 U.S. 1112, 105 S. Ct. 793, 83 L.

---

[6] General Statutes § 52-145 provides in pertinent part: "(a) A person shall not be disqualified as a witness in any action because of . . . (3) his conviction of crime.

"(b) A person's . . . conviction of crime may be shown for the purpose of affecting his credibility."

Ed. 2d 786 (1985), quoting *Heating Acceptance Corp.* v. *Patterson*, 152 Conn. 467, 472, 208 A.2d 341 (1965).

"Under the standards that we have recognized, prior convictions that are admissible for impeachment purposes may be segregated into two general categories. First are those crimes that by their very nature indicate dishonesty or tendency to make false statement. . . . Beyond the obvious violations such as perjury or false statement, we have recognized that crimes involving larcenous intent imply a general disposition toward dishonesty such that they also fall within this category. . . . Convictions of this sort obviously bear heavily on the credibility of one who has been convicted of them. . . . The second category involves convictions for crimes that do not reflect directly on the credibility of one who has been convicted of them. . . . The theory behind the admissibility of these convictions as evidence of credibility posits that conviction of a crime demonstrates a bad general character, a general readiness to do evil and that such a disposition alone supports an inference of a readiness to lie in the particular case . . . . Convictions of crimes that fall within this second category blemish the character of one so convicted. A juror might reasonably conclude that such a witness lacks to some degree the moral rectitude from which a witness's oath of honesty derives its credibility." (Citations omitted; internal quotation marks omitted.) *State* v. *Geyer*, 194 Conn. 1, 12–13, 480 A.2d 489 (1984).

Wassil's larceny and forgery convictions fall within the first category of prior convictions that are admissible for impeachment purposes and, therefore, had the potential to weigh heavily in the jury's assessment of his credibility. While Wassil's narcotics conviction falls within the second category; see *State* v. *Carter*, 34 Conn. App. 58, 73, 640 A.2d 610 (1994), rev'd on other grounds, 232 Conn. 537, 656 A.2d 657 (1995); it was admitted into evidence and had the potential to under-

mine the jury's confidence in Wassil's testimony. That Wassil had not one but three prior felony convictions, two of which directly implicated his veracity, was highly relevant to the defendant's efforts to undermine Wassil's credibility and, consequently, to her defense. We thus conclude that, in this case, the trial court fell short of its duty to refer the jury to the essential facts surrounding the jury instruction regarding use of a witness' prior felony convictions.

Because this claim is not of constitutional magnitude; see *State* v. *Walton*, 227 Conn. 32, 64–65, 630 A.2d 990 (1993); the defendant is required to demonstrate that it is more probable than not that the improper instruction affected the result. See *State* v. *Chapman*, 229 Conn. 529, 544, 643 A.2d 1213 (1994). "For an erroneous portion of a charge to be reversible error, this court must consider the whole charge and it must be determined, in appeals not involving a constitutional question, if it is reasonably probable that the jury [was] misled . . . ." (Internal quotation marks omitted.) Id., 545. Because Wassil's credibility was crucial to the state's case, we conclude that the defendant has satisfied her burden of showing harmful error.

## II

The defendant next claims that the trial court improperly denied her motion for judgment of acquittal as to sale of narcotics.[7] She argues that the state did not present sufficient evidence that she had committed a "sale" as that term is defined by General Statutes § 21a-240 (50).[8]

---

[7] Although we find the defendant's first claim dispositive, we must address the sufficiency of the evidence claim since the defendant would be entitled to an acquittal of the charge if she prevails on this claim. See *State* v. *Wolff*, supra, 29 Conn. App. 527 n.4.

[8] General Statutes § 21a-240 (50) provides: " 'Sale' is any form of delivery which includes barter, exchange or gift, or offer therefor, and each such

"When a claim on appeal challenges the sufficiency of the evidence we first review the evidence in the light most favorable to sustaining the jury's verdict; next we determine, whether, upon the facts established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt. . . . *State* v. *Holder*, 18 Conn. App. 184, 194, 557 A.2d 553 (1989)." (Internal quotation marks omitted.) *State* v. *Ives*, 37 Conn. App. 40, 55, 654 A.2d 789 (1995).

The defendant's claim is premised entirely on her interpretation of the statutory definition of "sale." In its denial of her motion for judgment of acquittal, the trial court found that § 21a-240 (50) defines sale as " 'any form of delivery . . .' which includes the defendant's actions in the present case." The defendant asserts that § 21a-240 (50) requires proof not just of "any form of delivery," but of "any form of delivery which includes barter, exchange or gift, or offer therefor." She argues that the "which includes" clause is restrictive rather than descriptive and that, consequently, only those forms of delivery accompanied by a barter, exchange, gift or offer therefor qualify as a sale. In this case, the defendant maintains that she did not make a barter, exchange, gift or offer therefor because she owned neither the heroin nor the $40. Rather, because she merely passed the money and the heroin during the sale between the unidentified woman and Wassil, she did not commit a sale.

The defendant's argument is unavailing in light of our Supreme Court's recent decision in *State* v. *Wassil*, 233 Conn. 174, 658 A.2d 548 (1995).[9] In that case,

transaction made by any person whether as principal, proprietor, agent, servant or employee . . . ."

[9] As a result of the events giving rise to this case, Wassil was convicted of sale of narcotics and manslaughter in the first degree. On appeal, Was-

the court reviewed the legislative history and concluded that, "under § 21a-240 (50), 'any form of delivery' of narcotics constitutes a 'sale' of narcotics, whether the delivery is also a 'barter,' exchange or gift, or offer therefor.' We thus read the statute as if it contained a comma after the word delivery: ' "[s]ale" is any delivery, which includes barter, exchange or gift or offer therefor . . . .' " Id., 195; see also *State* v. *Mierez*, 24 Conn. App. 543, 551, 590 A.2d 469, cert. denied, 219 Conn. 910, 911, 593 A.2d 136 (1991); *State* v. *Jackson*, 13 Conn. App. 288, 294, 535 A.2d 1327 (1988).

Applying the definition of sale enunciated in *State* v. *Wassil*, supra, 233 Conn. 195, we conclude that the jury could have reasonably found that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt. The defendant does not contest the fact that she handed two bags of heroin to Wassil, thereby engaging in a delivery of narcotics.[10] For this reason, we conclude that the trial court properly denied the defendant's motion for judgment of acquittal.

## III

The defendant's third claim is also controlled by *State* v. *Wassil*, supra, 233 Conn. 174.[11] She asserts that the trial court inadequately charged the jury as to the definition of sale by simply reading the statute without explaining that the "which includes" clause is restric-

---

sil argued, inter alia, that the trial court should have read to the jury the entire statutory definition of sale, rather than simply defining sale as "any form of delivery." *State* v. *Wassil*, supra, 233 Conn. 192.

[10] "Delivery" is defined in General Statutes § 21a-240 (11) as "the actual, constructive or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship . . . ."

[11] We address the defendant's final two claims because they are likely to arise in the retrial. See *Konover Development Corp.* v. *Zeller*, 228 Conn. 206, 233, 635 A.2d 798 (1994).

tive.[12] Consequently, she contends, the jury could have understood that mere delivery of narcotics is a sale and thus convicted her on an impermissible theory of liability. The *Wassil* court, faced with a similar claim, concluded that mere delivery of narcotics *is* a sale pursuant to §§ 21a-240 (50) and 21a-277. Id., 195. For this reason, we conclude that the defendant cannot prevail on this claim.

## IV

The defendant's final claim is that the trial court improperly failed to instruct the jury on an essential element of the crime charged, thereby depriving her of her federal and state due process rights.[13] She argues that the trial court failed to instruct the jury as to the definition of "agent" as that term is used in § 21a-277 (a). The defendant concedes that this claim is unpreserved, but seeks appellate review pursuant to the doctrine of *State* v. *Evans*, 165 Conn. 61, 327 A.2d 576 (1973), and *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[14] We conclude, however, that

[12] The court charged in pertinent part as follows: "The word 'sell' here has a much broader meaning than it does in ordinary usage. It is not confined to a delivery of narcotics which is paid for by someone else. Sale is a form of delivery which includes barter, exchange, or gift, or offer therefor; each transaction made by any person whether as a principal, proprietor, agent, servant, or employee."

[13] "Due process claims under the federal and state constitutions can be treated together because they impose similar constitutional limitations. *Keogh* v. *Bridgeport*, 187 Conn. 53, 59–60, 444 A.2d 225 (1982). The defendant offers no argument for separate treatment of [her] state constitutional claim. Accordingly, we will consider only [her] federal constitutional claim. *State* v. *Mercer*, 208 Conn. 52, 67 n.9, 544 A.2d 611 (1988)." *State* v. *Flanders*, 214 Conn. 493, 500 n.4, 572 A.2d 983, cert. denied, 498 U.S. 901, 111 S. Ct. 260, 112 L. Ed. 2d 217 (1990).

[14] Under *State* v. *Golding*, supra, 213 Conn. 239–40, the defendant can prevail on an unpreserved claim of constitutional error "only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject

the defendant's claim fails to satisfy the second prong of the *Evans/Golding* test.

" 'It is . . . constitutionally axiomatic that the jury be instructed on the essential elements of a crime charged.' *State* v. *Williamson*, 206 Conn. 685, 708, 539 A.2d 561 (1988). 'The due process clause of the fourteenth amendment protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970) . . . .' (Citations omitted.) *State* v. *Gabriel*, 192 Conn. 405, 413, 473 A.2d 300 (1984). Consequently, the failure to instruct a jury on an element of a crime deprives a defendant of the right ' "to have the jury told what crimes he is actually being tried for and what the essential elements of those crimes are." ' Id., 414." *State* v. *Denby*, 35 Conn. App. 609, 614, 646 A.2d 909, cert. denied, 231 Conn. 941, 653 A.2d 823 (1994).

An essential element of the crime of sale of narcotics in violation of § 21a-277 (a) is that the defendant commit a sale as that term is defined in § 21a-240 (50). As noted, § 21a-240 (50) provides that a sale is "any form of delivery . . . and each such transaction made by any person whether as principal, proprietor, agent, servant or employee . . . ." While the trial court read the definition of sale to the jury, it did not define the term "agent."[15] The defendant argues that the trial court's

to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances."

[15] "Agent" is defined in General Statutes § 21a-240 (3) as "an authorized person who acts on behalf of or at the direction of a manufacturer, distributor or dispenser. It does not include a common or contract carrier, public warehouseman, or employee of the carrier or warehouseman . . . ."

failure to do so violated her right to due process because one's status as an agent is an essential element of the definition of sale and, therefore, of the offense. We conclude, however, that status as an agent is not an essential element of the offense of sale of narcotics.

In considering this claim, we must adhere to "well defined principles of statutory interpretation that require us to ascertain and give effect to the apparent intent of the legislature. . . . To determine the intent of the legislature, we first consider whether the statutory language yields a plain and unambiguous resolution. . . . If the words are clear and unambiguous, it is assumed that [they] express the intention of the legislature . . . and we need inquire no further. . . . The words of a statute must be interpreted according to their ordinary meaning unless their context dictates otherwise. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Mattioli*, 210 Conn. 573, 576–77, 556 A.2d 584 (1989). Also, General Statutes § 1-1 (a) mandates that "[i]n the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language . . . ."[16]

The plain language of § 21a-240 (50) establishes that a sale is accomplished when "any form of delivery" is made by "any person." Whether one makes the delivery as principal, proprietor, agent, servant or employee is irrelevant. The statutory definition of "delivery" further supports the determination that the status of the person making the delivery is irrelevant to liability.

---

[16] We recognize that penal statutes must be construed strictly in favor of the accused. *State* v. *Somerville*, 214 Conn. 378, 384, 572 A.2d 944 (1990). While this is true, the strict construction of a penal statute nonetheless "must accord with common sense and commonly approved usage of the language." *State* v. *Edwards*, 201 Conn. 125, 132, 513 A.2d 669 (1986).

That definition provides that delivery is "the actual, constructive or attempted transfer from one person to another of a controlled substance, *whether or not there is an agency relationship* . . . ." (Emphasis added.) General Statutes § 21a-240 (11). Therefore, because it is immaterial whether one is an agent in the course of a sale of narcotics, one's status as an agent is not an essential element of that offense. For this reason, the defendant did not have a constitutional right to have the jury charged as to the definition of agent. Because the defendant's claim is not of constitutional magnitude alleging the violation of a fundamental right, we decline to review it.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.