STATE OF CONNECTICUT *v.* SCOTT DAWKINS
(13543)

O'Connell, Foti and Schaller, Js.

Argued February 28—officially released September 3, 1996

*Neal Cone*, assistant public defender, for the appellant (defendant).

*John A. East III*, deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Stephen Preleski*, assistant state's attorney, for the appellee (state).

SCHALLER, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4), larceny in the second degree in violation of General Statutes § 53a-123 (a) (3) and assault in the third degree in violation of General Statutes § 53a-61. The defendant claims that the trial court improperly (1) instructed the jury that an adverse inference could be drawn from the defendant's failure to produce his sister, Mina Dawkins, and her boyfriend, Norman Ramsey, as witnesses, (2) admitted evidence of the defendant's prior larceny convictions for impeachment purposes, and (3) instructed the jury regarding the stan-

dard of reasonable doubt. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On January 23, 1993, the victim, Cheryl Michaud, arrived at BJ's Wholesale Club in Hartford at approximately 8:15 p.m. After completing her shopping at approximately 8:48 p.m., she left the store and loaded her purchases into her car. While she was returning her shopping cart, it became stuck in a sewer grate. The defendant approached the victim from the direction of the cart storage area as she attempted to free the cart. The defendant asked the victim if he could use her cart, and she agreed. The defendant asked the victim if she wanted twenty-five cents for the cart deposit, and she declined. The defendant withdrew a small black handgun from his coat pocket, pushed it into the victim's back and told her not to scream or he would shoot her. With the gun pressed against the victim's back, the defendant pushed the victim toward her car and attempted to force her into the car. When the victim refused, the defendant struck her in the back. He then took the victim's wedding band, her engagement ring and $5.75. The defendant walked away into a wooded area next to the parking lot.

## I

The defendant first claims that the trial court improperly delivered an adverse missing witness instruction to the jury and improperly allowed the state to present an adverse inference argument. We disagree.

At trial, the defendant attempted to establish an alibi defense. The defendant and Mildred Dawkins, his mother, testified to the following. The defendant lived with his mother, and he had been at home with his mother at the time of the robbery. On the night in question, Mina Dawkins and Ramsey picked up the defendant and his mother between 5 and 6 p.m. and

drove them to visit Mildred Dawkins' aunt. They remained at the aunt's house for approximately ninety minutes and returned home with Mina Dawkins and Ramsey sometime between 6:30 and 7:45 p.m. The defendant remained inside the house the rest of the night. Mina Dawkins and Ramsey lived in nearby communities and were "available" at the time of trial.[1]

The defendant did not call either Mina Dawkins or Ramsey as witnesses. The state requested that the trial

---

[1] On cross-examination, the defendant testified as follows:

"[State's Attorney]: What is your sister's name?

"[The Defendant]: Mina.

\* \* \*

"[State's Attorney]: And where does she live?

"[The Defendant]: Burnside Avenue, East Hartford.

"[State's Attorney]: Does she still live there?

"[The Defendant]: Yes, Sir.

"[State's Attorney]: She's around?

"[The Defendant]: Yes.

"[State's Attorney]: And please tell us who else you claim went with you on January twenty-third to visit your aunt.

"[The Defendant]: Her boyfriend, Norman Ramsey.

"[State's Attorney]: Where does he live?

"[The Defendant]: Windsor, Connecticut.

"[State's Attorney]: Is he around?

"[The Defendant]: Yes, Sir."

On cross-examination, the defendant's mother, Mildred Dawkins, testified as follows:

"[State's Attorney]: Your daughter's name, Mrs. Dawkins, I understand is—is it Mina or Minah?

"[Mrs. Dawkins]: Mina. M-I—

"[State's Attorney]: Mina. Okay. Dawkins. And she lives in East Hartford?

"[Mrs. Dawkins]: Yes, Sir.

"[State's Attorney]: Does she presently live there?

"[Mrs. Dawkins]: Yes.

"[State's Attorney]: I see. And her fiance, or her boyfriend, is Norman Ramsey?

"[Mrs. Dawkins]: Yes.

"[State's Attorney]: And he lives in Windsor?

"[Mrs. Dawkins]: Yes, Sir.

"[State's Attorney]: Is—and does he presently live in Windsor?

"[Mrs. Dawkins]: He's presently living there. When he went to the wake over my aunt's house, he wasn't.

"[State's Attorney]: Okay. All right. But, at the present time, that's where he's living?

"[Mrs. Dawkins]: Yup."

court give the jury an adverse inference instruction pursuant to *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 165 A.2d 598 (1960), because the defendant had failed to produce these two witnesses in support of his defense. The court gave an adverse inference instruction, as requested by the state, in its charge to the jury. The court, over the defendant's objection, also allowed the state to argue to the jury that the defendant's failure to produce the two witnesses permitted an adverse inference. We conclude that the trial court properly gave the requested charge and that the state, therefore, could argue the inference to the jury.

In *Secondino*, our Supreme Court stated the conditions under which an adverse inference instruction is appropriate. " 'The failure of a party to produce a witness who is within his power to produce and who would naturally have been produced by him, permits the inference that the evidence of the witness would be unfavorable to the party's cause.' . . .   There are two requirements for the operation of the rule: The witness must be available, and he must be a witness whom the party would naturally produce. . . . A witness who would naturally be produced by a party is one who is known to that party and who, by reason of his relationship to that party or to the issues, or both, could reasonably be expected to have peculiar or superior information material to the case which, if favorable, the party would produce." (Citations omitted.) Id., 675; *Hines* v. *St. Vincent's Medical Center*, 232 Conn. 632, 637, 657 A.2d 578 (1995); *State* v. *Grant*, 221 Conn. 93, 105–106, 602 A.2d 581 (1992). The *Secondino* rule applies to criminal prosecutions. *State* v. *Grant*, supra, 105; *State* v. *Watley*, 195 Conn. 485, 488, 488 A.2d 1245 (1985). A trial court's adverse inference instruction will not be disturbed absent an abuse of discretion. *State* v. *Grant*, supra, 106.

The defendant argues that Mina Dawkins and Ramsey were not alibi witnesses who would naturally be produced because they could not testify that the defendant was in his mother's house at the time of the robbery. Mina Dawkins and Ramsey brought the defendant and his mother home from the aunt's house on the night of the robbery. The defendant's alibi defense relies heavily on his and his mother's testimony and that testimony would have become more credible if other witnesses had corroborated a substantial part of it. The testimony did not relate to an isolated incident, but, instead, involved a series of events related to the facts of the alibi defense. This was an identification case, and the defendant's alibi was crucial. Only Mina Dawkins and Ramsey could corroborate the testimony regarding the defendant's alibi.

"The testimony of several witnesses in support of an alibi defense can hardly be characterized as unimportant or cumulative." *State* v. *Grant,* supra, 221 Conn. 106. The credibility of the defendant's mother was cast into doubt by her relationship to the defendant. See id. The defendant's failure to call either Mina Dawkins or Ramsey to corroborate, at least in part, both his testimony and that of his mother as to events occurring on the evening of the robbery, especially given the strong and contradictory evidence presented by the state through the testimony of the victim, was a significant circumstance to call to the attention of the jury. See id. The trial court, therefore, did not abuse its discretion in giving the *Secondino* charge.

If the instruction were deemed improper, the burden of demonstrating its harmfulness would still rest with the defendant. *State* v. *Ross,* 230 Conn. 183, 215, 646 A.2d 1318 (1994), cert. denied, 513 U.S. 1165, 115 S. Ct. 1133, 130 L. Ed. 2d 1095 (1995). The defendant must prove that the trial court improperly instructed the jury and that the instruction probably affected the result of

the trial. *State* v. *Buster*, 224 Conn. 546, 561, 620 A.2d 110 (1993). The harmfulness of a nonconstitutional error is evaluated on the record as a whole. *State* v. *Ross*, supra, 215. "An improper instruction is not automatically harmful merely because it adversely affects a defense." Id.; *State* v. *Cooper*, 182 Conn. 207, 212–14, 438 A.2d 418 (1980).

Even if the defendant had demonstrated that the *Secondino* instruction was improper, he has not demonstrated that it affected the outcome of the trial. First, the defendant's testimony is suspect as self-serving, and the testimony of his mother is suspect due to her familial bias. Second, the victim positively identified the defendant as the robber on three separate occasions, over a one year time period, as the man who had robbed her. Third, the trial court clearly instructed the jury that it was permitted, but not required, to draw an adverse inference.[2] Even if the jury determined that the testimony of the missing witnesses was not reasonably and logically connected to the question of whether the defendant was present at the scene of the robbery, it could find the defendant guilty by believing the testi-

---

[2] The trial court instructed the jury as follows: "The burden which rests upon the state to prove the accused guilty beyond a reasonable doubt necessarily involves proof that he was present at the scene of the crime when it was committed. It's sufficient if, as you consider all the evidence, there arises in your mind a reasonable doubt as to Mr. Dawkins' presence at the scene of the crime when it was committed. If you do conclude that there is a doubt, the accused is entitled to a verdict of not guilty. You will recall that, in final argument, the state asked you to infer, from the fact that Mina Dawkins and Norman Ramsey, who, if memory serves, and it's your recollection, not mine, that controls . . . Mina Dawkins was the sister of the defendant and Norman Ramsey was referred to as her fiance or her boyfriend. The state has asked you to infer, from the fact that those people were not called as witnesses, that their testimony would have been unfavorable to the defendant. . . . Now, I emphasize to you, first, that this adverse inference, this inference that the person, if called as a witness, would have given unfavorable evidence, is a permissive inference. That is, you may draw the inference, but you are not required to, depending on whether you think it's a reasonable and logical inference."

mony of the victim over that of the defendant and his mother.

The defendant also claims that the giving of a *Secondino* instruction in a criminal case where the defendant advances an alibi defense violates his constitutional right to due process. The defendant did not raise this claim at trial, but seeks review on appeal pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). We find no merit in this claim.[3]

The defendant cannot satisfy the second prong of *Golding*, that the claim is of constitutional magnitude involving the violation of a fundamental constitutional right. "The giving of a *Secondino* charge is purely an evidentiary issue and is not a matter of constitutional dimensions." *State* v. *Anderson*, 212 Conn. 31, 41–42, 561 A.2d 897 (1989). "[O]nce identified, unpreserved evidentiary claims masquerading as constitutional claims will be summarily dismissed." *State* v. *Golding*, supra, 213 Conn. 241. A long line of cases addressing the identical argument concerning the violation of a constitutional right by the giving of a *Secondino* instruction rejects the defendant's argument. See *State* v. *Shashaty*, 205 Conn. 39, 43–44, 529 A.2d 1308 (1987), cert. denied, 484 U.S. 1027, 108 S. Ct. 753, 98 L. Ed. 2d 766 (1988); *State* v. *Peary*, 176 Conn. 170, 182, 405 A.2d 626

---

[3] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding*, supra, 213 Conn. 239–40. "We have stated previously that '[w]e are free, however, to dispose of the claim by focusing on the condition that appears most relevant under the circumstances of the case.' *State* v. *Andrews*, 29 Conn. App. 533, 537, 616 A.2d 1148 (1992), cert. denied, 224 Conn. 924, 618 A.2d 531 (1993)." *State* v. *Krzywicki*, 39 Conn. App. 832, 836, 668 A.2d 387 (1995).

(1978), cert. denied, 441 U.S. 966, 99 S. Ct. 2417, 60 L. Ed. 2d 1072 (1979); *State* v. *Annunziato*, 169 Conn. 517, 536–39, 363 A.2d 1011 (1975); *State* v. *Lucci*, 25 Conn. App. 334, 344–45, 595 A.2d 361, cert. denied, 220 Conn. 913, 597 A.2d 336 (1991); *State* v. *Hudson*, 14 Conn. App. 463, 471, 541 A.2d 534, cert. denied, 209 Conn. 803, 548 A.2d 439 (1988).

## II

The defendant claims next that the trial court improperly permitted the introduction of three of his prior convictions for impeachment purposes and refused to require the state to refer to the defendant's third degree larceny conviction as an unnamed felony. The defendant also claims that the court thereby adversely affected the presumption of innocence and, thus, deprived him of the right to a fair trial. We disagree.

Our review of the record reveals that the trial court permitted the state to impeach the defendant's credibility by introducing a prior conviction for larceny in the third degree and two prior convictions for larceny in the sixth degree. The trial court stated that the prior convictions were admissible because they were particularly probative of the defendant's credibility.[4]

Generally, evidence that a defendant has been convicted of crimes on prior occasions is not admissible. *State* v. *Cooper*, 227 Conn. 417, 434–35, 630 A.2d 1043 (1993); *State* v. *Geyer*, 194 Conn. 1, 5, 480 A.2d 489 (1984). This rule, however, has several well established exceptions. *State* v. *Geyer*, supra, 5–6. One of these exceptions permits the state, "in certain circumstances, to introduce evidence of a criminal defendant's prior convictions after the defendant has testified for the purpose of impugning the credibility of the defendant's

---

[4] The trial court also prohibited the introduction of two prior convictions of the defendant for larceny in the sixth degree because of its determination that the prejudicial impact outweighed any probative value.

testimony." Id., 6; General Statutes § 52-145 (b);[5] *State* v. *Cooper*, supra, 434–35; *State* v. *Theriault*, 38 Conn. App. 815, 821, 663 A.2d 423, cert. denied, 235 Conn. 922, 666 A.2d 1188 (1995). This evidence is properly admissible when its prejudicial effect does not "far outweigh" its probative value. *State* v. *Geyer*, supra, 7.

The probative value of the proffered evidence is assessed in light of the fact or issue that it was intended to prove. Id. "Three factors have usually been identified as of primary importance in considering whether a former criminal conviction is to be admitted: (1) the extent of the prejudice likely to arise; (2) the significance of the commission of the particular crime in indicating untruthfulness; and (3) its remoteness in time." *State* v. *Nardini*, 187 Conn. 513, 522, 447 A.2d 396 (1982); *State* v. *Sauris*, 227 Conn. 389, 409, 631 A.2d 238 (1993); *State* v. *Geyer*, supra, 194 Conn. 11; *State* v. *Prutting*, 40 Conn. App. 151, 158–59, 669 A.2d 1228 (1996). "A trial court's decision to allow the use of a prior conviction for impeachment purposes will not be disturbed unless the court abused its discretion." *State* v. *Sauris*, supra, 409; *State* v. *Braswell*, 194 Conn. 297, 307, 481 A.2d 413 (1984), cert. denied, 469 U.S. 1112, 105 S. Ct. 793, 83 L. Ed. 2d 786 (1985).

Two general categories of prior convictions are admissible for impeachment. *State* v. *Geyer*, supra, 194 Conn. 12. "First are those crimes that by their very nature indicate dishonesty or tendency to make false statement. . . . The second category involves convictions for crimes that do not reflect directly on the credibility of one who has been convicted of them." (Citation omitted.) Id.; *State* v. *Theriault*, supra, 38 Conn. App. 822. It is recognized in Connecticut courts "that crimes

[5] General Statutes § 52-145 (b) provides: "A person's interest in the outcome of the action or his conviction of crime may be shown for the purpose of affecting his credibility."

involving larcenous intent imply a general disposition toward dishonesty such that they also fall within this [first] category. . . . Convictions of this sort obviously bear heavily on the credibility of one who has been convicted of them. The probative value of such convictions, therefore, may often outweigh any prejudice engendered by their admission." (Citation omitted.) *State* v. *Geyer*, supra, 12. The prior convictions at issue here fall within the first category. Each involved a prior conviction for larceny.

"The trial court, because of its intimate familiarity with the case, is in the best position to weigh the relative merits and dangers of any proffered evidence." Id., 13. The record reveals that the trial court considered the remoteness of the convictions, their similarities to the present charges and the significance of the prior convictions in indicating truthfulness. We conclude that the trial court did not abuse its discretion by admitting the defendant's three prior larceny convictions for the purpose of impeaching the defendant or by refusing to require the state to refer to the defendant's prior conviction of larceny in the third degree as an unnamed felony.

The defendant argues that his claim also raises constitutional issues. Because no constitutional argument was made at trial, the defendant seeks review under *State* v. *Golding*, supra, 213 Conn. 239–40. The defendant's claim, however, fails to satisfy the second prong of *Golding*, that the claim is of constitutional magnitude involving the violation of a fundamental constitutional right. "It is concerned solely with an evidentiary ruling on the admissibility of a prior conviction into evidence for purposes of impeaching the defendant's credibility. Calling it a constitutional issue will not make it one." *State* v. *Varszegi*, 36 Conn. App. 680, 686, 653 A.2d 201 (1995), aff'd, 236 Conn. 266, 673 A.2d 90 (1996).

## III

The defendant claims finally that the trial court's jury instructions regarding reasonable doubt lowered the burden of proof required for conviction in violation of his due process rights. Because this claim was not preserved at trial, the defendant seeks review pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40. We find no merit in the defendant's claim.

Specifically, the defendant challenges the following parts of the court's instruction: "A reasonable doubt, in other words, is a real doubt, an honest doubt, a doubt which has its foundation in the evidence or lack of evidence. It's the kind of doubt which, in the serious affairs which concern you in everyday life, you would pay heed and attention to. It's the kind of doubt which would make a reasonable person hesitate to act. . . . If you can, in reason, reconcile all of the facts proved with any reasonable theory consistent with the innocence of the accused, then you cannot find him guilty." Jury instructions similar or identical to these have consistently been upheld by the Connecticut courts. *State* v. *Ellis*, 232 Conn. 691, 705–706, 657 A.2d 1099 (1995); *State* v. *Williams*, 231 Conn. 235, 254 n.22, 645 A.2d 999 (1994); *State* v. *DePastino*, 228 Conn. 552, 572–73, 638 A.2d 578 (1994); *State* v. *Tucker*, 226 Conn. 618, 651–52, 629 A.2d 1067 (1993); *State* v. *Derrico*, 181 Conn. 151, 170–71, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980); *State* v. *Rivera*, 39 Conn. App. 96, 105–106, 664 A.2d 306, cert. denied, 235 Conn. 921, 665 A.2d 908 (1995); *State* v. *Colon*, 37 Conn. App. 635, 641–43, 657 A.2d 247, cert. denied, 234 Conn. 917, 660 A.2d 354 (1995); *State* v. *Taylor*, 37 Conn. App. 464, 467–73, 657 A.2d 659, cert. denied, 234 Conn. 907, 660 A.2d 859 (1995). In light of these cases, and after reviewing the trial court's entire charge to the jury, we conclude that the defendant has failed to satisfy the third prong of the *Golding* test, that the alleged

constitutional violation clearly exists and clearly deprived the defendant of a fair trial.

The judgment is affirmed.

In this opinion FOTI, J., concurred.

O'CONNELL, J., concurring. I disagree with the majority's conclusion that the trial court did not abuse its discretion in giving a *Secondino* instruction. In my opinion, the instruction was not warranted because Mina Dawkins and Norman Ramsey were not witnesses whom the defendant would naturally produce.

The defendant raised an alibi defense at trial. An alibi "places the defendant at the *relevant time of the crime* in a different place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party." (Emphasis added.) Black's Law Dictionary (6th Ed. 1990). A defendant asserting an alibi defense is therefore naturally expected to produce those witnesses with "peculiar or superior information" which is favorable to his whereabouts at the time of the crime. See *Hines* v. *St. Vincent's Medical Center*, 232 Conn. 632, 637, 657 A.2d 578 (1995). A defendant is not, however, naturally expected to produce witnesses whose testimony will be "comparatively unimportant" to his defense. See *State* v. *Williams*, 20 Conn. App. 263, 266, 565 A.2d 1365 (1989).

In this case, the defendant and his mother testified in support of the defendant's alibi defense. See part I of the majority opinion. Mina Dawkins and Ramsey could not testify to the defendant's whereabouts at the time the crime was committed. Instead, they would have testified that they dropped off the defendant and his mother at her house earlier that evening. As the state argued at trial and during its closing, this testimony was irrelevant to the defendant's alibi defense because,

even if Mina Dawkins and Ramsey had testified truthfully as to the time they dropped off the defendant and his mother, the defendant would still have had ample time to reach the crime scene after being returned home. The state, however, was permitted to argue *both* that the testimony of Mina Dawkins and Ramsey was irrelevant to the alibi defense *and* that the jury could simultaneously draw an adverse inference from the defendant's failure to produce these witnesses.

The crime was committed long after Mina Dawkins and Ramsey returned the defendant and his mother to her house. Although "[t]he testimony of several witnesses in support of an alibi defense can hardly be characterized as unimportant or cumulative"; *State* v. *Grant*, 221 Conn. 93, 106, 602 A.2d 581 (1992); Mina Dawkins and Ramsey are not witnesses who could have testified to the defendant's whereabouts at the time of the crime. They would have been able only to bolster Mildred Dawkins' credibility by corroborating her version of events two hours before the crime. Unlike the majority, I cannot conclude that this testimony was part of "a series of events related to the facts of the alibi defense" so as to make it material.

The state contends that the testimony was material because it would have bolstered the credibility of Mildred Dawkins, thereby "inferentially" enhancing the credibility of the defendant's alibi defense. Once Mildred Dawkins testified in support of the defendant's alibi defense, the jury, as the finder of fact, was free to believe or disbelieve her.

Under the majority's analysis, a defendant will be required to bolster the general credibility of his alibi witness or suffer the consequences of a *Secondino* instruction. In my opinion, this is contrary to Connecticut law, which "follows the federal rules of evidence in that the credibility of a witness cannot be supported

until after it has been attacked. . . . 'Where a witness has not been impeached, it is not in general permissible to support his testimony by other evidence, corroborative in its nature, which bears on the credibility of the witness rather than on the issues in the cause . . . .' " (Citations omitted.) *State* v. *Suckley*, 26 Conn. App. 65, 72, 597 A.2d 1285, cert. denied, 221 Conn. 901, 600 A.2d 1028 (1991).

Although I would have concluded that the giving of a *Secondino* instruction was an abuse of discretion, the defendant has not sustained his burden of proving that the instruction affected the outcome of the trial. I therefore concur in the judgment.