[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner was found guilty after jury trial of violation of General Statutes § 53a-134, Robbery in the first degree, § 53a-61 Assault in the third degree and § 53a-123 Larceny in the second degree.
The incident which gave rise to these charges occurred January 23, 1993 at approximately eight forty-five at B.J.'s Wholesale Club in Hartford, Connecticut. The victim had completed her shopping and was returning her shopping carriage, which because stuck in a grate. At that point she was accosted by a man with a small black object which appeared to be a gun, pushing the gun into her body. He threatened to shoot her. He spoke to her quite a bit. He took from her five dollars and seventy-five cents, her wedding band and her diamond ring. He then walked into CT Page 13398 a wooded area adjacent to the premises.
The petitioner brings this petition claiming ineffective assistance of counsel in the trial level of the proceedings. The petitioner appealed the conviction to the Appellate Court. That court determined that the trial court was not in error in giving to the jury a "Secondino" charge, i.e. Secondino v. New Haven GasCo., 147 Conn. 672 (1960) because the defendant failed to produce two witnesses in support of his defense. See State v. Dawkins,42 Conn. App. 810 (1996), certification denied by the Supreme Court, October 17, 1996.
 I
The defendant claims, in this petition, that counsel failed to "properly investigate and interview numerous witnesses . . . which resulted in a damaging Secondino charge to the jury and further resulted in failure of counsel to create a reasonable doubt of guilt."
At this habeas trial he refers only to Mina Dawkins and her boyfriend Norman Ramsey. The petitioner produced for testimony his sister Mina Dawkins. No reference was made at this hearing, by name, as to the other listed persons who the petitioner, in the petition, claimed should have been produced at trial. This court does not know what, if anything, the petitioner claims that Mr. Ramsey or these other persons could have added to the evidence at trial.
At trial the petitioner testified that on the evening in question he left his mother's house at "around five, six o'clock" to visit an aunt in Hartford who had a death in the family. He testified that he was at the aunt's house for "approximately an hour and a half, two hours." Mr. Ramsey drove. Ramsey dropped off the petitioner at the mother's house. He testified that he could not remember at what time he was dropped off but states it was "after eight". He further states that he remained at the mother's home, where he lives, for the remainder of the night. He relaxed, was watching TV and tried to soothe the pain he was having in his teeth — his new teeth.
The petitioner's mother testified, at the criminal trial about going to see the aunt that evening. That they left the mother's house about five or six o'clock, six thirtyish, and that they returned home "about maybe seven thirty, quarter to eight. CT Page 13399 They were brought home by Mr. Ramsey. She further testified that the petitioner then stayed home that evening and that the petitioner stayed in the living room watching TV. She further testified that she gets up frequently as she is taking diuretics, about every half hour until midnight. On this night she want to friends house to get medication, aspirins or Tylenol, as the petitioner was having toothaches. She claims that this foray took place about nine or nine fifteen o'clock.
In essence the testimony of the petitioner and his mother was quite consistent, the mother's testimony supporting the testimony of the son.
At this habeas hearing the petitioner produced his sister Mina Dawkins. Her testimony as to the time sequence of the evening in question is very ambivalent. She states she was with her brother, the petitioner, from 5 or 6 p. m. until 9:00 to 10:00 p. m. She states that they were at the family function for 2 1/2 to 3 hours. She then testifies on cross examination that she is not sure what time they dropped him off.
It is obvious to this habeas court that this witnesses confused recollection, or testimony, of the events of that evening cast no light on the events of that evening. The obvious danger to the defendant of calling such a witness, which one would expect to have a clear recollection of a trip relating to a family death, is that the jury may well believe that the entire testimony of the defendant and the mother, which is consistent, is in fact contrived, thereby casting grave doubt on the alibi testimony of the defendant and his mother.
Mina Dawkins testified at this habeas hearing, that defense counsel did telephone her and discussed the matter, but did not call her to testify.
The giving of the Secondino charge was a subject of the appeal. The concurring appellate opinion felt that the charge should not have been given, but that it was harmless as the crime was committed "long after Mina Dawkins and Ramsey returned the defendant and his mother to his house."
The court, although alerting counsel that it was going to give a Secondino charge as concerns Mina Dawkins and Norman Ramsey, did specifically advise that the defendant is given permission to point out to the jury that these persons were not CT Page 13400 "a witness" that they would naturally and logically call, because there's no claim that those witnesses were in the presence of the defendant at nine p. m. or eight thirty, or what have you. Defense counsel, in strong and direct language to the jury, calls this missing witness comment by the prosecutor a "smoke screen", because those persons could not testify about the petitioner's whereabouts at the time of the crime.
Finally, the court, in giving the Secondino charge, points out to the jury as follows: "and that testimony is, as I recall it . . . tends to show that these people last saw the defendant an hour, or possibly even two hours, before the time of the incident charged in this., in this information."
It is obvious that counsel, and the court in giving theSecondino charge, makes it very clear that under all the evidence at trial neither Mina Dawkins or Norman Ramsey could add anything to determine the whereabouts of the petitioner when the crime was committed. (It should be noted the petitioner did not at the habeas hearing call Mr. Ramsey or the other persons listed in his petition, nor did he argue that any of them would have added anything to the trial, or to his defense).
When the testimony of a witness is not credible, in the sense, as found by this habeas court, that it is confused, confusing and unreliable, it is not "ineffective" for the trial counsel to fail to call that witness. Even if that witnesses testimony would have been consistent, but merely cumulative, which here it was not, it would not be considered prejudicial to fail to call the witness. Chace v. Bronson, 19 Conn. App. 674,680, 681 (1989).
"Judicial scrutiny of counsel's performance must be highly deferential and courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."
 Fair v. Warden 211 Conn. 398, 403, 404 (1989)
The court finds that the failure to call as witnesses the persons listed in the petition did not constitute ineffective assistance of counsel. CT Page 13401
 II The Photo Array.
The petitioner claims that a photo array of the petitioner and seven other persons was in fact prejudicial to the petitioner.
The victim, on February 10, 1993, was shown three photo arrays, each containing eight photos. The last of the set, entered in evidence, depicts the petitioner and seven other individuals. Each are African-American, have close cropped hair and are reasonably similar in appearance.
The victim identified the petitioner. The petitioner here raises the question of a temporary bruise on his photo being confused with the assailant's scar. In reviewing the photos a bruise or scar is not observable.
The court can discern no legitimate basis for an objection to the photo array. The victim independently identified the petitioner in court doing the trial. Further, there is no reason to believe that if the photo identification had been excluded the result of the trial "would have been different." Quintana v.Warden, 220 Conn. 1, 4 (1991).
 III The Video Camera Line up
The petitioner claims that a video line up conducted on December 14, 1993, in court, prior to the commencement of evidence on January 6, 1994 was highly prejudicial and that counsel should have objected to its admission.
The petitioner testified at this hearing that he was the one who requested the line up. Both counsel agreed to the courtroom line up. An inspector, a representative of the State's Attorney's Office and of the Public Defender's Office and Judge Koletsky were there.
The video line up, viewed by the habeas court, was quite favorable to the petitioner and must be viewed as a clever defense tactic. Two of the petitioner's brothers were in the line CT Page 13402 up. The petitioner was number 5. Number 6, his brother standing next to him, bears a close resemblance to the petitioner.
Nevertheless, the minute they turned around, the victim promptly recognized the petitioner as the assailant. Each man came up and said "may I use your cart?" The victim asked only to see number 5, the petitioner, once again, which re-confirmed her definite and positive identification of the petitioner. There appeared to be no ambivalence on the part of the victim in accomplishing this identification.
The petitioner claims that this line up was highly prejudicial, but does not explain how it is claimed to be prejudicial. If anything the line up which he requested was slanted to the benefit of the petitioner because of the presence of his look alike brother.
This court can see no reason why this video tape should not have been entered into evidence. There had been a great deal of testimony about the line up prior to the introduction of the tape.
The tape itself was the most accurate reflection of what occurred doing the line up, and as a visual and audio reproduction is undoubtedly the most accurate evidence.
The prejudice claimed by the petitioner is the fact that the evidence did not assist his case. That is not erroneous prejudice precluded by law. Bearing in mind the victims s in court identification it is unlikely that as to whether the tape had any influence upon the jury's decision.
 IV Claim of Prior Inconsistent Statement of Victim
The petitioner does not pursue this claim at this trial, does not point out to the habeas court what is meant thereby, and is hence found to be not proven.
 V Claim for failure to establish petitioner's involvement with East Hartford Police Department as Informer.
CT Page 13403
The petitioner does not articulate what is meant by this claim. As best the court can infer the petitioner may be claiming that because he was an informant of the East Hartford Police Department during a time frame which would include the date of the crime. The petitioner does not describe what substantive value that would have as concerns the issues of the case. It is assumed that the petitioner feels that this information would curry favor with the jury by showing his involvement with law enforcement. This court does not see that such evidence is relevant or material, and would not have been admissible for any known purpose.
 VI
The court determines that the petitioner has failed to prove his allegations under any of the claims advanced by him. The petition is therefore dismissed.
L. Paul Sullivan, J.