# STATE OF CONNECTICUT *v.* LUIS RIVERA
## (12565)

O'Connell, Landau and Heiman, Js.

Argued June 1—decision released September 5, 1995

*Suzanne Zitser,* assistant public defender, for the appellant (defendant).

*Susann E. Gill,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *John Blawie,* assistant state's attorney, for the appellee (state).

LANDAU, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of larceny in the first degree in violation of General Statutes §§ 53a-119 (8) and 53a-122 (a) (3).[1] On appeal, the defendant claims that the trial court improperly (1) commented on his failure to testify, (2) denied his motion for judgment of acquittal, (3) instructed the jury as to reasonable

---

[1] The state charged the defendant by long form information with larceny in violation of General Statutes §§ 53a-119 and 53a-122 (a) (3). In its request to charge, the state particularized its allegation to subsection (8) of § 53a-119. The court subsequently charged the jury only on the elements of larceny in the first degree by receiving stolen property in violation of §§ 53a-119 (8) and 53a-122 (a) (3).

General Statutes § 53a-119 (8) provides in relevant part: "Receiving stolen property. A person is guilty of larceny by receiving stolen property if he receives, retains, or disposes of stolen property knowing that it has probably been stolen or believing that it has probably been stolen, unless the property is received, retained or disposed of with purpose to restore it to the owner. . . ."

General Statutes § 53a-122 (a) provides in relevant part: "A person is guilty of larceny in the first degree when he commits larceny as defined in section 53a-119 and . . . (3) the property consists of a motor vehicle, the value of which exceeds ten thousand dollars . . . ."

doubt, and (4) instructed the jury as to the presumption of innocence.

The jury could reasonably have found the following facts. On October 30, 1991, John Hart reported that his silver and maroon 1989 Chevrolet Astro van, valued at $13,200, had been stolen from outside his place of employment in East Fishkill, New York. The van was a "conversion" model, to which Hart had added a color television, a special console, wood trim, a special paint job and venetian blinds.

On November 5, 1991, police officers assigned to an automobile theft task force that operated out of Bridge- port observed the van parked behind the defendant's residence in Bridgeport. On November 27, several of the police officers returned to the location and one of them noticed that the vehicle identification number (VIN) plate looked as if it had been replaced and that there was a "for sale" sign on the van. The name Papo and a telephone number were on the sign. While the officer was surveying the van, the defendant emerged from his residence and asked whether there was a problem. After the defendant asserted that he did not own the van, the officer arranged to have the van towed to the Bridgeport police garage.

At the garage, an inspection of the van revealed that the ignition had been damaged in such a way that the vehicle could be operated without a key; the rivets on the VIN plate were scratched, indicating that the VIN plate was not factory installed; the driver's side door lock had been removed; the passenger's side door panels were torn apart; the exterior of the van was heavily scratched; the decals and emblems indicating a conver- sion model had been removed; and the windshield was cracked. From inside a compartment beneath the rear seat of the van, the police recovered several documents establishing that Hart was the van's owner. This fact

was corroborated by a check of the secondary VIN, the location of which is known only by the manufacturer.

Inside the van's glove compartment, the police found a registration card and an insurance card in the name of Edwuin Alvino. These documents pertained to a 1985 Chevrolet Astro van, not to the 1989 van owned by Hart. The newly attached VIN also related to the 1985 van. A search of the chain of title of the 1985 van revealed that the defendant had purchased it in 1991 and thereafter sold it to Alvino. Upon further investigation, the police discovered that no one at Alvino's purported address had any knowledge of him and that the insurance card in his name was fraudulent.

The defendant, who refers to himself as Papo, later told the police that Alvino asked him to sell the van and that he was unaware of Alvino's whereabouts. A subsequent search of the defendant's residence produced a telephone bill that revealed that the defendant's telephone number was the same as that on the for sale sign. The search also yielded various implements commonly used in the theft of vehicles and alteration of VINs.

I

The defendant first claims that the trial court twice commented improperly on his failure to testify. He asserts that the comments, which went beyond the "no adverse interest" instruction mandated by General Statutes § 54-84 (b),[2] violated his rights against self-incrimi-

---

[2] General Statutes § 54-84 provides: "(a) Any person on trial for crime shall be a competent witness, and at his or her option may testify or refuse to testify upon such trial. The neglect or refusal of an accused party to testify shall not be commented upon by the court or prosecuting official, except as provided in subsection (b) of this section.

"(b) Unless the accused requests otherwise, the court shall instruct the jury that they may draw no unfavorable inferences from the accused's failure to testify. In cases tried to the court, no unfavorable inferences shall be drawn by the court from the accused's silence."

nation and to due process pursuant to the fifth and fourteenth amendments to the United States constitution.[3]

The following facts are pertinent to our analysis of this claim. The defendant did not testify at trial. During closing argument, counsel for the defendant attempted to explain the defendant's reaction after the prosecutor had asked Hart on direct examination whether the defendant had permission to drive the van. Defense counsel stated: "You notice that [the defendant] got all upset and you saw me, probably saw me shoosh him. . . . [The prosecutor's question is] a standard question because obviously if you have permission to have that vehicle, then there's no crime. . . . But my client doesn't understand this. You know, he took it literally. 'I don't, you know, I don't drive that thing.' " In response to an objection by the state as to the defendant's purported statement, the trial court instructed the jury: "You'll have to disregard any comments made in argument of what [the defendant] said. [The defendant] has not said anything. . . . There's no evidence in this case about [the defendant]."

The defendant also challenges a remark made by the trial court in its charge to the jury. While reviewing the evidence presented at trial, the court stated: "While it is acknowledged that . . . there [are] other uses for [the items seized from the defendant's residence] . . . there hasn't been any demonstration as to any use here, except that they were in possession, in the apartment of the defendant at the time the search warrant was executed. So, you have to go over that testimony. Go through that stuff. Take your time. Become familiar with it. Know

[3] While the defendant also invokes article first, § 8, of the Connecticut constitution, he has failed to provide an independent analysis of his claim thereunder. Consequently, we limit our review to a consideration of his claim pursuant to the federal constitution. See *State* v. *Sivri*, 231 Conn. 115, 140–41 n.16, 646 A.2d 169 (1994).

what the claims of the state are in regard to it. *Know the claims of the defendant, but they were made in his argument and cross-examination of Detectives Meehan and MacNamara.*" (Emphasis added.)

As a threshold matter, we note that the defendant failed to object at trial to either of the remarks that he now challenges. A review of the case law makes it clear, however, that his claim is nonetheless entitled to plenary review. See *State* v. *Walker*, 206 Conn. 300, 306–307, 537 A.2d 1021 (1988); *State* v. *Evans*, 165 Conn. 61, 71, 327 A.2d 576 (1973); *State* v. *Delosantos*, 13 Conn. App. 386, 391, 536 A.2d 609 (1988).

"The fifth and fourteenth amendments to the United States constitution forbid comment by the prosecution or the court about a defendant's failure to testify in his own behalf. [*Griffin* v. *California*, 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965)]; *State* v. *DeMartino*, 7 Conn. App. 292, 508 A.2d 809 (1986); see *State* v. *Arline*, 223 Conn. 52, 612 A.2d 755 (1992). The Connecticut legislature has affirmed this constitutional right by mandating that, unless the accused requests otherwise, the court must instruct the jury that it may draw no unfavorable inferences from an accused's failure to testify. General Statutes § 54-84 (b)." *Johnson* v. *Commissioner of Correction*, 34 Conn. App. 153, 162, 640 A.2d 1007 (1994).[4]

"The test to determine whether the comment violated the fourteenth amendment is whether a jury would naturally and necessarily understand the remarks to be a comment on the failure of the accused to testify. *State* v. *Correia*, 33 Conn. App. 457, 636 A.2d 860 (1994)." Id.

Turning first to the court's remarks during the defendant's closing argument, we conclude that the jury would not "naturally and necessarily" have interpreted them

---

[4] In this case, the trial court complied with the mandate of § 54-84 (b) by instructing the jury that "[y]ou may draw no unfavorable inferences from the accused's failure to testify."

as a comment on the defendant's failure to testify. During closing remarks, counsel for the defendant improperly interjected evidence that had not been admitted at trial —namely, the defendant's alleged statement that he had never driven the van. Upon objection by the state, the court properly instructed the jury to disregard the statement, as it was not based on any evidence properly in the case. The challenged remarks served to underscore that fact and, in context, were likely understood by the jury to be an explanation of why it must ignore defense counsel's statement.[5]

The defendant also challenges the trial court's remark in its charge to the jury, where it stated "the claims of the defendant were made in his argument and cross-examination of Detectives Meehan and MacNamara." A fair reading of the remark leads us again to conclude that the jury would not "naturally and necessarily" have interpreted it as a substantive comment on the defendant's failure to testify. Rather, the jury most likely interpreted the statement as a directive as to where in the evidence the defendant's arguments could be found. For these reasons, we conclude that the defendant's claim is without merit.

## II

The defendant next claims that the trial court improperly denied his motion for judgment of acquittal. He argues that the state failed to present sufficient evidence that the defendant, beyond a reasonable doubt, knew or

---

[5] Even if the trial court's remarks did emphasize the defendant's failure to testify, they do not necessarily violate the fifth amendment to the United States constitution. In *United States* v. *Robinson*, 485 U.S. 25, 108 S. Ct. 864, 99 L. Ed. 2d 23 (1988), the United States Supreme Court held that a direct comment on the silence of an accused was permitted when made in response to a defense argument. The trial court's remarks in this case were part of a corrective ruling, necessitated by defense counsel's improper statement.

believed that the van in his possession was probably stolen. We disagree.

"In reviewing a jury verdict that is challenged on the ground of insufficient evidence, we employ a two part analysis. We first review the evidence presented at trial, construing it in the light most favorable to sustaining the facts expressly found by the trial court or impliedly found by the jury. We then decide whether, upon the facts thus established and the inferences reasonably drawn therefrom, the trial court or the jury could reasonably have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt. . . . The evidence must be construed in a light most favorable to sustaining the jury's verdict." (Citations omitted; internal quotation marks omitted.) *State* v. *Ford*, 230 Conn. 686, 692, 646 A.2d 147 (1994).

Section 53a-119 (8) provides in part that "[a] person is guilty of larceny by receiving stolen property if he receives, retains, or disposes of stolen property knowing that it has probably been stolen or believing that it has probably been stolen, unless the property is received, retained or disposed of with purpose to restore it to the owner." In order to obtain a conviction, the state needed to prove (1) that the defendant received, retained or disposed of the van, (2) that the van was stolen and (3) that the defendant knew or believed that the van was probably stolen when he received, retained or disposed of it.[6] See *State* v. *Gabriel*, 192 Conn. 405, 473 A.2d 300 (1984); *State* v. *Taft*, 25 Conn. App. 149, 154, 593 A.2d 973, cert. denied, 220 Conn. 918, 597 A.2d 343 (1991) (language "unless the property is received, retained or disposed of with purpose to restore it to the owner" does not describe essential element of crime); *State* v. *Payne*, 12 Conn. App. 408, 530 A.2d 1110 (1987).

[6] Pursuant to § 53a-122 (a) (3), the state also needed to prove that the van was valued in excess of $10,000.

In this case, there is no dispute on appeal that the defendant retained the van, that the van was stolen property or that it was valued in excess of $10,000. Our inquiry is thus limited to whether the state presented sufficient evidence to prove beyond a reasonable doubt that the defendant knew or believed that the van was probably stolen. "Ordinarily, guilty knowledge can be established only through an inference from other proved facts and circumstances. The inference may be drawn if the circumstances are such that a reasonable man of honest intentions, in the situation of the defendant, would have concluded that the property was stolen." (Internal quotation marks omitted.) *State* v. *Hobson*, 8 Conn. App. 13, 25, 511 A.2d 348, cert. denied, 201 Conn. 808, 515 A.2d 379 (1986), cert. denied, 480 U.S. 917, 107 S. Ct. 1370, 94 L. Ed. 2d 686 (1987).

"Additionally, we note that possession of recently stolen property 'raises a permissible inference of criminal connection with the property, and if no explanation is forthcoming, the inference of criminal connection may be as a principal in the theft, or as a receiver under the receiving statute, depending upon the other facts and circumstances which may be proven.' *State* v. *Palkimas*, 153 Conn. 555, 559, 219 A.2d 220 (1966)." Id., 25–26.

Our review of the evidence in this case, undertaken in a light most favorable to sustaining the verdict, reveals a number of facts supporting the inference that the defendant knew or believed that the van had probably been stolen. The police observed the van behind the defendant's residence less than one week after its theft. At the time of its discovery, the van was in a condition that would indicate to a reasonable person of honest intentions that it had not been acquired by lawful means. Among other things, the van's ignition had been tampered with, rendering the vehicle operable without a key, the driver's side door lock had been removed and the VIN plate showed obvious signs of tampering. More-

over, the discovery in the defendant's residence of several implements commonly used in the theft of vehicles supports the inference that the defendant was familiar with the indicia of a stolen vehicle.

We conclude, on the basis of the facts established and the inferences reasonably drawn therefrom, that the jury could reasonably have concluded that the cumulative effect of the evidence established beyond a reasonable doubt that the defendant knew or believed that the van had been stolen. The trial court properly denied the defendant's motion for judgment of acquittal.

## III

In his final claims, both unpreserved, the defendant asserts that the trial court improperly charged the jury when it instructed (1) that "[a] reasonable doubt is a doubt for which you can assign a valid reason" and (2) that "the law is made to protect society and innocent persons, and not to protect guilty ones." He maintains that the latter instruction undermined his right to a presumption of innocence and lessened the state's burden of proof beyond a reasonable doubt. The defendant seeks review of his claims pursuant to *State* v. *Evans*, 165 Conn. 61, 327 A.2d 576 (1973), and *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[7]

Since the filing of this appeal, our Supreme Court has considered whether instructions identical to those

---

[7] Under *State* v. *Golding*, supra, 213 Conn. 239–40, the defendant can prevail on an unpreserved claim of constitutional error "only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances."

challenged by the defendant violate a defendant's due process rights. *State* v. *Ellis*, 232 Conn. 691, 693 n.5, 657 A.2d 1099 (1995). The court affirmed the line of cases holding that, in the context of a charge that is sound in its entirety, such instructions do not dilute the state's burden of proof or the defendant's presumption of innocence. Id., 705–706. In light of *Ellis*, and after reviewing the trial court's entire charge to the jury, we conclude that the defendant has failed to demonstrate that the alleged constitutional violation clearly exists and clearly deprived him of a fair trial, as required by the third prong of *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.