## STATE OF CONNECTICUT *v.* DUANE FOSTER
## (AC 15530)

Dupont, C. J., and Spear and Hennessy, Js.

Argued February 26—officially released June 10, 1997

*Pamela S. Nagy*, special assistant public defender, for the appellant (defendant).

*Margaret Gafffney Radionovas*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Dennis J. O'Connor*, assistant state's attorney, for the appellee (state).

*Opinion*

SPEAR, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of larceny in the third degree in violation of General Statutes §§ 53a-124 and 53a-119 (8),[1] three counts of reckless endangerment in the first degree in violation of § 53a-63 (a),[2] interfering with a peace officer in violation of § 53a-167a,[3] using a motor vehicle without the owner's permission in violation of § 53a-119b (a) (1),[4] and with being a persistent serious felony offender pursuant to General Statutes § 53a-40 (b) and (g).[5] The defendant claims

[1] General Statutes § 53a-119 (8) provides in relevant part: "A person is guilty of larceny by receiving stolen property if he receives, retains, or disposes of stolen property knowing that it has probably been stolen or believing that it has probably been stolen, unless the property is received, retained or disposed of with purpose to restore it to the owner. . . ."

[2] General Statutes § 53a-63 (a) provides: "A person is guilty of reckless endangerment in the first degree when, with extreme indifference to human life, he recklessly engages in conduct which creates a risk of serious physical injury to another person."

[3] General Statutes § 53a-167a (a) provides: "A person is guilty of interfering with an officer when he obstructs, resists, hinders or endangers any peace officer or fireman in the performance of his duties."

[4] General Statutes § 53a-119b (a) provides in relevant part: "A person is guilty of using a motor vehicle without the owner's permission when: (1) He operates or uses, or causes to be operated or used, any motor vehicle unless he has the consent of the owner . . . ."

Section 53a-119b (d) provides in relevant part: "Using a motor vehicle . . . without the owner's permission . . . is a class A misdemeanor for a first offense and a class D felony for each subsequent offense."

[5] General Statutes § 53a-40 provides in relevant part: "(b) A persistent felony offender is a person who (1) stands convicted of a felony, and (2) has been, prior to the commission of the present felony, convicted of and

that (1) the evidence was insufficient to support his conviction of larceny and using a motor vehicle without the owner's permission, (2) the trial court improperly instructed the jury on larceny in the third degree, (3) his convictions of both larceny in the third degree and using a motor vehicle without the owner's permission constituted double jeopardy, and (4) the trial court improperly sentenced him as a second offender pursuant to § 53a-119b (a) (1) and (d). We affirm the judgment of conviction.

The jury reasonably could have found the following facts. On September 7, 1993, John Vaicaulis owned a 1985 two-tone gold Dodge 600 bearing vehicle registration plate number JX77 and an Avon products front plate. On that evening, Vaicaulis used the vehicle to drive his wife to an Avon products sales meeting in East Hartford. At approximately 7:30 p.m., as Vaicaulis was seated in the Dodge waiting for his wife, an unidentified man approached the vehicle. Vaicaulis and the man engaged in a conversation, during which time Vaicaulis explained that he was waiting for his wife. Vaicaulis then agreed to drive the man to his destination because it was raining. After they arrived at the destination, the man took the vehicle without Vaicaulis' permission. Vaicaulis reported the vehicle as stolen to both the police and his insurer, the Metropolitan Insurance Company (Metropolitan). Neither Vaicaulis nor Metro-

imprisoned under an imposed term of more than one year or of death, in this state or in any other state or in a federal correctional institution, for a crime. . . .

"(g) When any person has been found to be a persistent serious felony offender, and the court is of the opinion that his history and character and the nature and circumstances of his criminal conduct indicate that extended incarceration will best serve that public interest, the court in lieu of imposing the sentence of imprisonment authorized by section 53a-35 for the crime of which such person presently stands convicted, or authorized by section 53a-35a if the crime of which such person presently stands convicted was committed on or after July 1, 1981, may impose the sentence of imprisonment authorized by said section for the next more serious degree of felony. . . ."

politan gave permission to anyone to operate the vehicle.

Michele Harrison, the defendant's girlfriend, first saw the defendant driving a two-tone gold Dodge 600 with license plate number JX77 and an Avon front plate in September, 1993. The defendant explained that he had borrowed the car from an unidentified friend. He further explained that his friend's wife sold Avon products and he would have the car for two weeks. The defendant remained in possession of the car, however, until November 16, 1993. Between September and mid-November, the defendant and Harrison used the car every day.

On November 16, 1993, at approximately 6 p.m., Officer Harold Pu'Sey of the Hartford police department noticed a two-tone Dodge 600 that matched the description of a stolen vehicle. As Pu'Sey was turning east onto Nelson Street, the vehicle was stopped at a stop sign facing west on Nelson Street. The defendant was operating the vehicle and Harrison was a passenger. Upon noticing Pu'Sey, the defendant continually looked in his direction and watched him. Pu'Sey followed the defendant as he traveled down Garden Street and onto Edgewood Street. As he turned onto Edgewood, the defendant pulled up to the curb and turned off the lights. Pu'Sey approached the vehicle and ordered Harrison and the defendant, at gunpoint, to put their hands on the dashboard. The defendant did not comply, and asked Harrison what he had done. Harrison replied that, while he had not done anything wrong, he should comply with Pu'Sey's order. At that point, the defendant drove off at a high rate of speed. Pu'Sey returned to his cruiser, activated his lights and siren, and pursued the defendant down four streets. During the chase, the defendant drove in excess of fifty-five miles per hour, made evasive maneuvers, crossed the center line, and almost lost control of the vehicle. As the defendant

proceeded down a one-way street in the wrong direction, he came within one foot of three children. The defendant proceeded at a high rate of speed until he came to a dead end in Keeney Park. At that point, the defendant told Harrison not to identify him or to converse with the police and fled on foot. Pu'Sey initiated a foot chase and eventually found the defendant hiding behind a porch. Pu'Sey and the defendant engaged in a brief scuffle, and the defendant was arrested.

Later that same day, the defendant initiated a conversation with Detective Peter Getz of the Hartford police department and Detective Gary Ouellette of the East Hartford police department. The defendant claimed that he had leased the Dodge from Mike C. in exchange for a quantity of marijuana. He did not reveal when the lease occurred, Mike C.'s last name, or the street address where the transaction took place.

The relevant procedural history is as follows. The defendant was charged in a two part information. Part B of the information accused the defendant of being a persistent felony offender in violation of § 53a-40 (b) and (g).[6] In addition, prior to trial the state filed a notice of sentence enhancement,[7] which notified the defend-

---

[6] See footnote 5.

[7] The notice of penalty enhancement provides as follows: "Pursuant to Connecticut General Statutes §§ 53a-119b (d) and 54-62, the undersigned Senior Assistant State's Attorney hereby gives notice to the defendant, DUANE ANTHONY FOSTER, of the following:

"1. That Count Six of the Information in that above-captioned matter is Using A Motor Vehicle Without The Owner's Permission, Connecticut General Statutes § 53a-119b.

"2. That on April 11, 1982, in Superior Court, G.A. 14, Hartford, under Docket Number 14-0256414, the Defendant was convicted of the crime of Using a Motor Vehicle Without The Owner's Permission.

"3. That in the event the Defendant, DUANE ANTHONY FOSTER, is convicted of Count Six, Using A Motor Vehicle Without The Owner's Permission, the penalty for that offense would be enhanced from a Class A Misdemeanor to a Class D Felony because of the Defendant's subsequent offender status pursuant to Connecticut General Statutes § 53a-119b (d)."

ant that, if he was convicted of violating § 53a-119b, the state would seek the enhanced penalty provided therein. After the jury rendered a guilty verdict, the defendant pleaded guilty to being a persistent serious felony offender and to having a prior conviction under § 53a-119b. He received a total effective sentence of twenty-three years. This appeal followed.

## I

The defendant first claims that the evidence adduced at trial was insufficient to sustain his convictions of larceny in the third degree by receiving a stolen motor vehicle and using a motor vehicle without the owner's permission. We are unpersuaded.

When reviewing a sufficiency of the evidence claim, our courts apply a two-prong test. " 'First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt.' " *State* v. *Sivri*, 231 Conn. 115, 126, 646 A.2d 169 (1994).

## A

The defendant's first claim is that the state failed to prove what he asserts are the three essential elements of § 53a-119 (8): (1) that the defendant knew or believed the vehicle was probably stolen, (2) that he intended to deprive the owner of the car, and (3) that he did not receive, retain or dispose of the property with the purpose to restore it to its owner. We disagree.

Section 53a-119 (8) provides in relevant part: "A person is guilty of larceny by receiving stolen property if he receives, retains, or disposes of stolen property knowing that it has probably been stolen or believing that it has probably been stolen, unless the property is

received, retained or disposed of with purpose to restore it to the owner. . . ." The state must prove, beyond a reasonable doubt, the following elements: "(1) that the defendant received, retained or disposed of the [vehicle], (2) that the [vehicle] was stolen and (3) that the defendant knew or believed that the [vehicle] was probably stolen, when he received, retained or disposed of it." *State* v. *Rivera*, 39 Conn. App. 96, 103, 664 A.2d 306, cert. denied, 235 Conn. 921, 665 A.2d 908 (1995). It is the third element that is in dispute here.

"Ordinarily, guilty knowledge can be established only through an inference from other proved facts and circumstances. The inference may be drawn if the circumstances are such that a reasonable man of honest intentions, in the situation of the defendant, would have concluded that the property was stolen. . . . *State* v. *Hobson*, 8 Conn. App. 13, 25, 511 A.2d 348, cert. denied, 201 Conn. 808, 515 A.2d 379 (1986), cert. denied, 480 U.S. 917, 107 S. Ct. 1370, 94 L. Ed. 2d 686 (1987)." (Internal quotation marks omitted.) *State v. Rivera*, supra, 39 Conn App. 104. "Additionally, we note that possession of recently stolen property 'raises a permissible inference of criminal connection with the property, and if no explanation is forthcoming, the inference of criminal connection may be as a principal in the theft, or as a receiver under the receiving statute, depending upon the other facts and circumstances which may be proven.' " *State* v. *Hobson*, supra, 8 Conn. App. 25–26, quoting *State* v. *Palkimas*, 153 Conn. 555, 559, 219 A.2d 220 (1966).

The defendant asserts that there was insufficient evidence that the defendant knew or believed that the vehicle was stolen because the windows, steering column and ignition were intact and because the original license plate was on the car. Our review of the evidence, however, undertaken in a light most favorable to sustaining the verdict, reveals sufficient evidence that the

defendant knew or reasonably believed that the vehicle had probably been stolen. The theft occurred on September 7, 1993, and Harrison testified that the defendant first came into possession of the car a short time thereafter. He drove the car every day until he was arrested. In addition, the jury could have inferred consciousness of guilt from the defendant's inconsistent explanations. He first told Harrison that he borrowed the car from a friend whose wife sold Avon products and that he was to keep the car for a period of only two weeks. He then told the police that he had leased the vehicle from Mike C. in exchange for a quantity of marijuana. Finally, the jury could have considered, on the question of guilty knowledge, the evidence that the defendant drove away at a high rate of speed in a reckless manner after being stopped by Pu'Sey and that he fled on foot after driving into a dead end.

The defendant also claims that the state was required to prove beyond a reasonable doubt that he intended to deprive the owner of the vehicle because the element of specific intent contained in § 53a-119[8] is incorporated by reference into § 53a-119 (8). We disagree.

Although at common law the state was required to prove that the defendant intended to deprive the true owner of the property; see, e.g., *State* v. *Palkimas*, supra, 153 Conn. 558; in 1971, our legislature redefined the offense of larceny by receiving stolen property to eliminate, inter alia, the specific intent requirement. The commission comment to § 53a-119 states that "the actor's guilty intent is satisfied if he knows or believes that the property 'has probably been stolen.' " Commission to Revise the Criminal Statutes, Penal Code Comments, Connecticut General Statutes (1969).

---

[8] General Statutes 53a-119 provides in relevant part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ."

Furthermore, in *State* v. *Perez*, 181 Conn. 299, 315, 435 A.2d 334 (1980), our Supreme Court stated that specific intent is not an element of § 53a-119 (8). "It is axiomatic that the legislature may, if it so chooses, ignore the common-law concept that criminal acts require the coupling of the evil-meaning mind with the evil-doing hand and may define crimes which depend on no mental element, but consist only of forbidden acts or omissions. . . . If the legislature may define crimes which depend on no mental element, then it certainly may require an element of knowledge but no specific intent. If the statute does not include intent or knowledge as an element of the crime, their proof is not necessary." (Citations omitted; internal quotation marks omitted.) Id., 315–16; see also *State* v. *Gabriel*, 192 Conn. 405, 411–12, 473 A.2d 300 (1984). Accordingly, we conclude that intent to deprive is not an essential element of § 53a-119 (8).

The defendant also argues that the state was required to prove that the property was not "received, retained or disposed of with the purpose to restore it to the owner." See footnote 1. This claim is without merit.

This court considered and rejected this identical claim in *State* v. *Taft*, 25 Conn. App. 149, 153–54, 593 A.2d 973, cert. denied, 220 Conn. 918, 597 A.2d 343 (1991). " 'It is generally recognized that the state bears no initial burden of proof on matters personal to the defendant and peculiarly within his own knowledge.' . . . Whether the defendant received, retained or disposed of the property with the purpose of restoring it to the owner is peculiarly within his personal knowledge. We conclude that [this part] of the statute is not an essential element [of larceny by receiving stolen property]." (Citation omitted.) Id.

## B

The defendant next claims that the evidence was insufficient to sustain his conviction for using a motor

vehicle without the owner's permission because (1) Mike C. was an owner within the meaning of the statute and (2) the state failed to prove that he knew that he did not have the owner's consent. We disagree.

The state presented evidence that Vaicaulis and Metropolitan were the only owners of the vehicle, and that neither gave the defendant permission to use the vehicle.[9] In addition, during the state's case-in-chief, two police officers testified that, after the defendant was arrested, he claimed that he had leased the vehicle from Mike C. in exchange for marijuana.

The defendant claims on appeal that because Mike C., his lessor, could be an owner within the meaning of § 53a-119b, the evidence was insufficient to sustain his conviction.[10] The jury, however, was not required to accept the defendant's statement as true. " '[T]he [jury] is free to juxtapose conflicting versions of events and determine which is more credible. . . . It is the [jury's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [jury] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject.' " *State* v. *Marsala*, 44 Conn. App. 84, 96, 688 A.2d 336, cert. denied, 240 Conn. 912, 690 A.2d 400 (1997). " 'We do not sit as a thirteenth juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. . . . Rather, we must defer to the jury's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude.' " *State* v. *Adams*, 225 Conn. 270, 278, 623 A.2d 42 (1993).

---

[9] The defendant did not present any evidence. He called an expert witness to testify but withdrew the witness immediately after he stated his qualifications.

[10] General Statutes § 53a-118 (b) provides: "A person who has obtained possession of property by theft or other illegal means shall be deemed to have a right of possession superior to that of a person who takes, obtains or withholds it from him by larcenous means."

The defendant also claims that the state failed to prove that he knew that he did not have the owner's permission to operate the car. We are unpersuaded.

The state argues that knowledge is not an element of § 53a-119b and asks this court to reconsider our decision in *In re Adalberto S.*, 27 Conn. App. 49, 53, 604 A.2d 822, cert. denied, 222 Conn. 903, 606 A.2d 1328 (1992). For the purposes of this appeal, we assume, without deciding, that *Adalberto* requires proof of guilty knowledge on the part of a defendant operator[11] charged with violating § 53a-119b. We conclude that the jury reasonably could have concluded that the defendant knew he did not have Vaicaulis' or Metropolitan's consent. If the jury failed to credit the defendant's statement that he leased the car from Mike C., the evidence that neither owner gave permission to the defendant to use or operate the car was sufficient, in conjunction with the other circumstances,[12] to sustain the defendant's conviction for operating a motor vehicle without the owner's permission.

II

The defendant raises three challenges to the court's instructions on larceny in the third degree. He failed to object to the instructions at trial and seeks review in this court pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[13]

---

[11] *In re Adalberto* involved a defendant who was one of several passengers. We concluded that the evidence was insufficient to convict the defendant, a passenger in a stolen car, where the state proved that the owner of the car did not give permission to the defendant, but the state failed to prove lack of permission to the others in the car. We stated that, where a passenger is charged with using a motor vehicle without the owner's permission, the state must prove that no one in the car had the owner's permission to use the vehicle and that the defendant passenger knew of that lack of permission.

[12] See part I A of this opinion.

[13] In order to obtain review pursuant to *Golding*, the defendant must first show that "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a funda-

## A

The defendant first claims that the trial court improperly failed to charge the jury that the state was required to prove that the defendant intended to deprive the owner of the vehicle. This claim fails under the second prong of *Golding* and·is subsumed in part I A of this opinion.

## B

The defendant next claims that the trial court's failure to charge the jury that Mike C. could have been an owner within the meaning of § 53a-119 (8) deprived him of his right to present a defense to the charge of receiving stolen property.[14] We will review his claim because the first two prongs of *Golding* are satisfied. We conclude, however, that the claim is without merit.

"[A] defendant is entitled to have the court present instructions to the jury relating to any theory of the defense for which there is any foundation in the evidence, even if weak or incredible. . . . We must consider the evidence presented at trial in the light most favorable to supporting the defendant's request to charge." (Citations omitted.) *State* v. *Adams*, supra, 225 Conn. 283.

We have already discussed the essential elements of § 53a-119 (8) in part I A of this opinion. In that discussion, we rejected the defendant's claim that "intent to deprive the owner of the car" is an element of the crime. Consequently, the court's failure to charge sua sponte

mental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding*, supra, 213 Conn. 239–40.

[14] The defendant concedes in his brief that he was not deprived of this defense with respect to the charge of using a motor vehicle without the owner's permission.

that Mike C. could have been an owner did not prevent the defendant from presenting a defense. The relevant consideration for the jury was whether the defendant knew or believed that the vehicle was probably stolen. Evidence about Mike C. would be relevant only on that issue. Indeed, the defendant's closing argument on this issue centered around the defendant's lack of knowledge that the car was stolen. His brief reference to Mike C. was in the context of this issue and his claim that "intent to deprive the owner" was an essential element of the crime. With respect to guilty knowledge, the trial court instructed the jury to consider "all of the circumstances surrounding his *receipt* or retention of the property in so far as those circumstances have been proven to you." (Emphasis added.) Consideration of the circumstances surrounding the defendant's receipt of the car necessarily included his claim concerning Mike C. The jury had every right to reject the claim that the defendant did not have the requisite guilty knowledge because of the alleged lease from Mike C.

The trial court's failure to instruct the jury, sua sponte, on Mike C.'s possible ownership of the car did not violate the defendant's right to present a defense or deprive him of a fair trial.

C

The defendant also claims that the trial court improperly instructed the jury that the unexplained possession of stolen property could support an inference that the defendant knew or believed that the vehicle was probably stolen.[15] He claims that review pursuant to *Golding*

---

[15] The court gave the following instruction: "[P]ossession by the defendant of recently stolen property, if unexplained and standing alone, or without other facts pointing to a contrary conclusion, may permit you to draw an inference that the person possessing the property knew or believed that it had probably been stolen. This inference is not a necessary one, that is, you are not required to draw this inference, but you may do so if you find it to be reasonable and logical. . . ."

is appropriate because the instruction deprived him of his ability to present a defense. We disagree and decline to review his claim.

The defendant concedes that the charge was a correct statement of law. See, e.g., *State* v. *Palkimas*, supra, 153 Conn. 558–59. He argues, however, that because he offered an explanation as to his possession of the vehicle, the charge was improper, and the court in effect instructed the jury not to believe his defense. This claim is evidentiary and not of a constitutional nature. The jury was not required to accept the proffered explanation or to draw only those inferences consistent with innocence; rather, it was free to accept or reject evidence and to draw whatever inferences from the evidence it deemed reasonable and logical. See *State* v. *Grant*, 219 Conn. 596, 604, 594 A.2d 459 (1991). Furthermore, the trial court clearly instructed the jury that it was not required to draw the inference that the defendant knew or believed that the vehicle was probably stolen. "The court was not required to enumerate all the possible innocent explanations offered by the defendant. The fact that the evidence might support an innocent explanation as well as an inference of [guilty knowledge] does not make an instruction . . . erroneous." *State* v. *Wright*, 198 Conn. 273, 281, 502 A.2d 911 (1986).

## III

The defendant next claims that his conviction of both larceny in the third degree and using a motor vehicle without the owner's permission violates double jeopardy in violation of the state and federal constitutions.[16]

---

[16] The double jeopardy clause of the fifth amendment to the federal constitution provides: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . ." This clause is applicable to the states through the due process clause contained in the fourteenth amendment. See *Benton* v. *Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). Although our state constitution does not include a

The defendant seeks *Golding* review of this unpreserved claim and the state concedes that *Golding* review is proper.[17] We conclude that the claim is without merit.

## A

The federal constitutional prohibition against double jeopardy consists of three guarantees: "(1) 'It protects against a second prosecution for the same offense after acquittal. [2] It protects against a second prosecution for the same offense after conviction. [3] And it protects against multiple punishments for the same offense.' " *State* v. *Lonergan*, 213 Conn. 74, 78–79, 566 A.2d 677 (1989), cert. denied, 496 U.S. 905, 110 S. Ct. 2586, 110 L. Ed. 2d 267 (1990). The defendant's claim implicates the aspect of double jeopardy analysis that guards against multiple punishments for the same offense in a single trial.

"With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended. . . . The role of the constitutional guarantee [against double jeopardy] is limited to assuring that the court does not exceed its legislative authorization by imposing multi-

specific double jeopardy provision, our Supreme Court has held that article first, § 9, of the Connecticut constitution encompasses a prohibition against double jeopardy. *Kohlfuss* v. *Warden*, 149 Conn. 692, 695, 183 A.2d 626, cert. denied, 371 U.S. 928, 83 S. Ct. 298, 9 L. Ed. 2d 235 (1962).

[17] We are aware that in *State* v. *Jones*, 166 Conn. 620, 353 A.2d 764 (1974), and *State* v. *Ledbetter*, 240 Conn. 317, 325–27, 692 A.2d 713 (1997), our Supreme Court found that failure to raise a double jeopardy claim in the trial court constituted a waiver of the constitutional right. Review was declined in each case. In *Jones*, the claim involved a second trial and in *Ledbetter* the issue involved the state's appeal from a judgment of acquittal. This case involves a claim of multiple punishments for the same offense in a single prosecution, as did *State* v. *Hill*, 237 Conn. 81, 98–99, 675 A.2d 866 (1996), where the Supreme Court engaged in a *Golding* review of an unpreserved double jeopardy claim.

ple punishments for the same offense. . . . The issue, though essentially constitutional, becomes one of statutory construction." (Citations omitted; internal quotation marks omitted.) *State* v. *Greco*, 216 Conn. 282, 290, 579 A.2d 84 (1990). "Double jeopardy analysis in the context of a single trial is a two-step process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met." (Internal quotation marks omitted.) *State* v. *John*, 210 Conn. 652, 693, 557 A.3d 93, cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989). In this case, the state concedes that the charges arose out of the same transaction; the defendant therefore must show only that the two statutes criminalize the same offense.

In making this determination, our courts have traditionally applied the test set out by the United States Supreme Court in *Blockburger* v. *United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). " '[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.' " *State* v. *Nixon*, 231 Conn. 545, 550, 651 A.2d 1264 (1995), quoting *Blockburger* v. *United States*, supra, 304. " 'This test is a technical one and examines only the statutes, charging instruments and bill of particulars as opposed to the evidence presented at trial.' " *State* v. *Nixon*, supra, 441, quoting *State* v. *Lonergan*, supra, 213 Conn. 79.

The defendant argues that using a motor vehicle without the owner's permission is a lesser included offense of larceny because he could not have committed the latter offense without necessarily having committed the former. "For double jeopardy purposes, a lesser included offense and the greater offense are considered

to be one offense. *Brown* v. *Ohio*, [432 U.S. 168, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977)]; *State* v. *Goldson*, 178 Conn. 422, 425, 423 A.2d 114 (1979). 'The test for determining whether one violation is a lesser included offense in another violation is whether it is possible to commit the greater offense, in the manner described in the information . . . without having first committed the lesser.' " *State* v. *Nixon*, supra, 231 Conn. 553. If the charge of larceny by receiving stolen goods does not entail proof of using a motor vehicle without the owner's permission, then the two offenses are not the same. " 'The mere possibility that the State will seek to rely on all of the ingredients necessarily included in the [lesser offense] to establish an element of [the greater offense] would not be sufficient to bar the latter prosecution [on double jeopardy grounds].' " Id., 553, quoting *Illinois* v. *Vitale*, 447 U.S. 410, 419, 100 S. Ct. 2260, 65 L. Ed. 2d 228 (1980).

After examining the language of §§ 53a-119 (8) and 53a-119b and the information filed in this case,[18] we conclude that the two offenses are not the same and that using a motor vehicle without the owner's permission is not a lesser included offense of larceny by receiving stolen property. Section 53a-119 (8) requires proof of receipt or retention of a stolen vehicle, while § 53a-119b requires proof of use or operation of a vehicle without the owner's permission. It is possible to receive

[18] Count one of the long form information stated in pertinent part: "[O]n or about November 16, 1993, at about 6:00 p.m., on various streets in Hartford, including but not limited to Garden Street, Edgewood Street, Vine Street, Keeney Terrace, as well as in Keeney Park, the defendant, DUANE ANTHONY FOSTER, committed the crime of larceny as defined by Connecticut General Statutes § § 53a-119 and 53a-119 (8), and the property consisted of a motor vehicle, the value of which is Five Thousand ($5,000) Dollars or less." Count six stated in pertinent part: "[I]n violation of Connecticut General Statutes § 53a-119b (a) (1) . . . on the same date as in Count One, at the same time as in Count One, at the same place as in Count One, the defendant, DUANE ANTHONY FOSTER, did operate and use a motor vehicle without the consent of the owner of that motor vehicle."

or retain a stolen vehicle without proof that the defendant used or operated the vehicle. Furthermore, § 53a-119 (8) requires proof that the defendant knew or believed that the property was probably stolen, while 53a-119b does not.

Our application of the *Blockburger* test, however, does not end here. "[T]he *Blockburger* rule is not controlling when the legislative intent is clear from the face of the statute or the legislative history. . . . [It] is a rule of statutory construction, and because it serves as a means of discerning [legislative] purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent. . . . If the legislature clearly expressed an intention that the statutes were designed to punish the same offense, then prosecution under both statutes would violate the double jeopardy clause." (Citations omitted.) *State* v. *Nixon*, supra, 231 Conn. 555. The defendant has failed to bring to our attention any relevant history to indicate that these two crimes were intended to be punished as one.

We conclude that the defendant's state and federal constitutional rights against double jeopardy were not violated.

## B

The defendant argues that our state constitution encompasses broader protection than the federal constitution and urges this court to adopt the "same evidence" test set forth in *State* v. *Lonergan*, supra, 213 Conn. 92. The *Lonergan* court held that "in successive prosecution cases 'if the same evidence offered to prove a violation of the offense charged in the first prosecution is the sole evidence offered to prove an element of the offense charged in the second prosecution, then prosecution of the second offense is barred on double

jeopardy grounds, regardless of whether either offense requires proof of a fact that the other does not.' " Id.

We rejected a similar request in *State* v. *Laws*, 37 Conn. App. 276, 290–95, 655 A.2d 1131, cert. denied, 234 Conn. 907, 659 A.2d 1210 (1995) and held that "the implied double jeopardy clause of our own constitution is coextensive with that found in the federal constitution. Our Supreme Court has repeatedly held that, as a general rule, the due process clauses of both the United States and Connecticut constitutions have the same meanings and impose similar limitations. *State* v. *Brigandi*, 186 Conn. 521, 542, 442 A.2d 927 (1982)." (Internal quotation marks omitted.) Id., 294. "Over the last fifty years, [the *Blockburger* rule] has consistently been applied by Connecticut courts in analyzing double jeopardy claims arising from multiple convictions and punishments imposed in a single trial. . . . Connecticut's citizens have no realistic expectation that they will have these double jeopardy claims scrutinized by a test that is more protective than the *Blockburger* test." Id., 295. Accordingly, we decline to adopt the same evidence test in a case involving alleged multiple punishments in a single prosecution.

## IV

Finally, the defendant claims that he was improperly sentenced as a second offender pursuant to § 53a-119b (a) (1) and (d) because the state did not prove during a part B proceeding[19] that he had a prior conviction. This claim is without merit.

[19] Practice Book § 619 provides: "Where the information alleges, in addition to the principal offense charged, a former conviction or convictions, such information shall be in two separate parts, each signed by the prosecuting authority. In the first part, the particular offense with which the accused is charged shall be set out, and in the other part the former conviction or convictions shall be alleged. In alleging the former conviction, it is sufficient that the information allege the date when, the town or city where, and the

Section 53a-119b (d) provides in relevant part: "Using a motor vehicle . . . without the owner's permission . . . is a class A misdemeanor for a first offense and a class D felony for each subsequent offense." Our rules of practice and case law provide that where a defendant is exposed to greater punishment according to his status as a subsequent offender, a two part information is required, along with a full judicial proceeding on part B of the information. See, e.g., Practice Book §§ 619 and 840; *State* v. *LaSelva*, 163 Conn. 229, 234, 303 A.2d 721 (1972); *State* v. *Ferrone*, 96 Conn. 160, 175, 133 A. 452 (1921). "Of course, the accused may plead guilty to [the second] part of the information, and then no further proceedings before or by the jury would be necessary." *State* v. *Ferrone*, supra, 175.

After the jury rendered its guilty verdict, the trial court advised the defendant, at the part B plea proceedings, of the persistent serious felony charge and that he faced an enhanced penalty as a result of his prior conviction of § 53a-119b[20] and the defendant entered a

court wherein such conviction was obtained and the crime of which the defendant was convicted, all of which may be stated in accordance with the provisions of Sec. 618."

Practice Book § 840 provides: "When an information is divided into two parts under Sec. 619, on a finding of guilty on the first part of the information, a plea shall be taken and, if necessary, election made on the second part and the trial thereon proceeded with. If the defendant elects a jury trial on the second part of the information, such trial may be had to the same or to another jury as the judicial authority may direct."

[20] The trial court advised the defendant: "Today you have been convicted of the following charges. Larceny in the third degree, which is a class D felony. You have also been convicted of the following charges which do not apply to the serious persistent offender statute. . . . [Y]ou have been convicted of three counts of reckless endangerment in the first degree, which are class A misdemeanors. That means they are punishable by maximum one year imprisonment on each count. . . . You have also been convicted on interfering with a police officer, which is also a class A misdemeanor. That carries with it a maximum penalty of one year. *But you have also been convicted of using a motor vehicle without the owner's permission. Now, for the first offense, the maximum penalty for that would be a class A misdemeanor for the first offense. For a second offense, that becomes a*

guilty plea. On appeal, he claims that the part B proceeding concerned only the persistent serious felony charge and his guilty plea did not pertain to the enhanced penalty provision of § 53a-119 (d). Prior to accepting the defendant's guilty plea, the trial court clearly advised the defendant that he was subject to an enhanced sentence as a consequence of his prior conviction. By his plea of guilty, the defendant waived his right to require the state to prove his prior conviction in a judicial proceeding. See *State* v. *Cooper*, 38 Conn. App. 661, 669–71, 664 A.2d 773, cert. denied, 235 Conn. 908, 665 A.2d 903 (1995).

The judgment is affirmed.

In this opinion the other judges concurred.

*class D felony, since you have previously been convicted of using a motor vehicle without the owner's permission. In your case, that would now become punishable as a class D felony. Now the punishment for class D felonies is a minimum of one year and a maximum of five years . . . .* So, to recap, because of the persistent felony offender statute, on the first charge of larceny in the third degree, you would now face a maximum of ten years. . . . *On the using a motor vehicle without the owner's permission, you would face a maximum penalty of five years, a minimum penalty of one year and/or a $5000 fine. Do you understand that? . . . That is what the clerk is asking you to plead guilty to.*" (Emphasis added.)